**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jason Fruits, | No. CV-12-02448-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn Colvin, Acting Commissioner,<br>Social Security Administration, | |
| Defendant. | |

Pursuant to 42 U.S.C. § 405(g), Plaintiff Jason Fruits seeks judicial review of the Commissioner's decision finding him not disabled within the meaning of the Social Security Act. The Court will affirm the Commissioner's decision.[1]

**I.   Background.[2]**

An administrative law judge ("ALJ") denied Plaintiff's application for social security benefits, finding Plaintiff was not disabled within the meaning of the Social Security Act. Tr. 27. The decision became Defendant's final decision when the Appeals Council denied review. *Id*. at 1. Plaintiff then brought this action for judicial review pursuant to 42 U.S.C. § 495(g).

---

[1] The Court notes that counsel for both sides included footnotes in their briefs that violate LRCiv 7.1(b)(1). Plaintiff's counsel, in particular, should know better. The parties shall comply in the future with this and all other local rules.

[2] The request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

1    **II.     Legal Standard.**

2           Defendant's decision to deny benefits will be vacated "only if it is not supported

3    by substantial evidence or is based on legal error." *Robbins v. Soc. Sec. Admin.*, 466 F.3d

4    880, 882 (9th Cir. 2006). "'Substantial evidence' means more than a mere scintilla, but

5    less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept

6    as adequate to support a conclusion." *Id.*   In determining whether the decision is

7    supported by substantial evidence, the Court must consider the record as a whole,

8    weighing both the evidence that supports the decision and the evidence that detracts from

9    it. *Reddick v. Charter*, 157 F.3d 715, 720 (9th Cir. 1998). If there is sufficient evidence

10   to support the Commissioner's determination, the Court cannot substitute its own

11   determination. *See Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990).

12   **III.    Analysis.**

13          For purposes of Social Security benefits determinations, a disability is

14          the inability to do any substantial gainful activity by reason of any
            medically determinable physical or mental impairment which can be
15          expected to result in death or which has lasted or can be expected to last for
            a continuous period of not less than 12 months.
16

17   20 C.F.R. § 404.1505.

18          Determining whether a claimant is disabled involves a five-step evaluation. The

19   claimant must show (1) she is not currently engaged in substantial gainful employment,

20   (2) she has a severe physical or mental impairment, and (3) the impairment meets or

21   equals a listed impairment or (4) her residual functional capacity ("RFC") precludes her

22   from performing her past work. If at any step the Commissioner determines that a

23   claimant is or is not disabled, the analysis ends; otherwise it proceeds to step five. If the

24   claimant meets her burden through step four, the Commissioner bears the burden at step

25   five of showing that the claimant has the RFC to perform other work that exists in

26   substantial numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).

27          At step one, the ALJ found that Plaintiff had not engaged in substantial gainful

28   activity from his alleged disability onset date through the date of the ALJ"s decision.

1    Tr. 19.  At step two, the ALJ found that Plaintiff suffered from ischemic heart disease,

2    depression, cardiomyopathy, dizziness, anxiety, fatigue, edema, status post Maze

3    procedure, obesity, and congestive heart failure.  *Id*. at 20.  The ALJ categorized these as

4    severe impairments as defined by Social Security regulations.  *Id*.  At step three, the ALJ

5    found that the combination of impairments did not meet or medically equal one of the

6    listed impairments.  *Id*.; *see* C.F.R. pt. 404, subpt. P. app, 1.  At step four, the ALJ found

7    that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R.

8    §§ 404.1567(a) and 416.967(a), except that he could not climb ladders, ropes, or scaffolds

9    and was limited to occasional climbing of stairs and ramps.  Tr. 23.  Additionally, the

10    ALJ found that Plaintiff could "engage in no more than occasional balancing, stooping,

11    crouching, kneeling, and crawling, and that he should avoid concentrated exposure to

12    extreme heat and cold," and "should avoid concentrated exposure to irritants such as

13    fumes, odors, dust, gases, and . . . concentrated exposure to poorly ventilated areas."  *Id*.

14    The ALJ found that Plaintiff could not be exposed to moving machinery or unprotected

15    heights and was limited to work that is simple, routine, and repetitive in an environment

16    free from paced production and work place changes.  *Id*.  With that RFC, the ALJ

17    determined that Plaintiff was unable to perform any past relevant work.  *Id*. at 26.  The

18    ALJ determined at step five, however, that Plaintiff's RFC enabled him to perform jobs

19    that exist in significant numbers in the national economy.  *Id*. at 26; *see* C.F.R. 404.1569,

20    404.1569(a), 416.969, & 416.969(a).  Accordingly, the ALJ concluded that Plaintiff was

21    not disabled within the meaning of the Social Security Act.  Tr. 27.

22        Plaintiff alleges that the ALJ erred by finding that his impairment did not meet or

23    equal a listed impairment, improperly assessing his RFC, failing to properly weigh

24    medical source opinions, and failing to properly weigh reported symptoms.  Plaintiff

25    asserts that the matter should be remanded for an award of benefits.  The Court will

26    address each argument in turn.

27        **A.**    **Meet or Medically Equal a Listed Impairment.**

28        Plaintiff has the burden to present evidence establishing that his impairments meet

1    or equal a listed impairment.  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a

2    claimant to show that his impairments match a Listing, it must meet all the specified

3    medical criteria.  An impairment that manifests only some of those criteria, no matter

4    how severely, does not qualify.").  An ALJ must evaluate all of the relevant evidence in

5    the record when making this determination.  *See Lewis v. Apfel*, 236 F.3d 503, 512 (9th

6    Cir. 2001) ("An ALJ must evaluate the relevant evidence before concluding that a

7    claimant's impairments do not meet or equal a listed impairment.  A boilerplate finding is

8    insufficient to support a conclusion that a claimant's impairment does not do so.").

9        In order to satisfy Plaintiff's burden under Listing 4.02, he must produce evidence

10   establishing that two requirements – one of the requirements in subsection A and one of

11   the requirements in subsection B – are satisfied.  20 C.F.R. pt. 404, subpt. P, app. 1,

12   § 4.02.  Plaintiff sought to satisfy the requirements under subsections A1 and B2 of

13   Listing 4.02.

14        **1.    Subsection A1.**

15        Subsection A1 requires the claimant to produce evidence of the medically

16   documented presence of "[s]ystolic failure . . . with left ventricular end diastolic

17   dimensions greater than 6.0 cm or ejection fraction of 30 percent or less during a period

18   of *stability* (not during an episode of acute heart failure)."  20 C.F.R. pt. 404, subpt. P,

19   app. 1, § 4.02A1 (emphasis added).  Plaintiff asserts that the ALJ's finding as to

20   subsection A1 is erroneous because medical evidence un the record shows repeated

21   measurements of claimant's left ventricular end diastolic dimensions greater than 6.0 cm

22   and ejection fraction of 30 percent or less.  Doc. 17 at 10-11.  The government responds,

23   however, that none of these measurements were taken during a period of *stability* – or at

24   least that the ALJ could have reasonably reached such a conclusion.  Doc. 18 at 11.  Each

25   of the measurements cited by Plaintiff was taken after Plaintiff had undergone invasive

26   surgery or treatment.  *Id*.  Although Plaintiff argues that the government's explanation is

27   impermissible *post hoc* rationalization, the ALJ specifically found that "the record does

28   not show evidence of systolic failure, with left ventricular end diastolic dimensions

1   greater than 6.0 cm or ejection fraction of 30 percent or less *during a period of stability*."

2   Tr. 21 (emphasis added).  The ALJ also referenced the evidence in more detail in the

3   evidentiary summary of his RFC assessment, which is a practice the Ninth Circuit has

4   approved.  *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990).  The Court

5   concludes that the ALJ's decision is based on substantial evidence.

6   **2.    Subsection B2.**

7   Subsection B2 requires the claimant to produce medical documentation of
    Three or more separate episodes of acute congestive heart failure within a
8   consecutive 12-month period . . . with evidence of fluid retention . . . from
    clinical and imaging assessments at the time of the episodes, requiring
9   acute extended physician intervention such as hospitalization or emergency
    room treatment for 12 hours or more, separated by periods of stability[.]
10

11  20 C.F.R. pt. 404, subpt. P, app. 1, § 4.02B2.  This language requires evidence of fluid

12  retention, acute extended physician intervention for 12 hours or more, separated by

13  periods of stability.  *Id.*  According to the ALJ:

14  It does not appear from the record that the claimant has experienced three
    or more separate episodes of acute congestive heart failure within a
15  consecutive 12-month period, with evidence of fluid retention from clinical
16  and imaging assessments at the time of the episodes, requiring acute
    extended physician intervention such as hospitalization or emergency room
17  treatment for 12 hours or more, separated by period of stabilization.

18

19  Tr. 21.

20
    Plaintiff asserts that he has been "hospitalized on numerous occasions for cardiac
21
    and congestive heart failure systems" in satisfaction of Subsection B2.  Doc. 17 at 10.
22
    The Court finds, however, that the ALJ's conclusion that Plaintiff does not satisfy the
23
    requirements of Subsection B2 is supported by substantial evidence.  The record contains
24
    assessments of fluid retention in conformity with subsection B2 only in association with
25
    Plaintiff's November 2008 and September 2010 hospitalizations.  Other measurements
26
    cited by Plaintiff were not made during episodes that required extended physician
27
    intervention such as hospitalization or emergency room treatment for 12 hours or more,
28
    or were not separated by periods of stability.  Only the November 2008 and September

1      2010 hospitalizations required extended physician intervention or were separated by

2      periods of stability as contemplated by Subsection B2.  The ALJ correctly concluded that

3      the record does not contain evidence of three or more such episodes.

4                    **3.      Medically Equal a Listed Impairment.**

5              Plaintiff asserts that even if his condition did not meet an impairment listed in

6      Listing 4.02, the ALJ erred in finding that his impairment was not medically equivalent to

7      a listed impairment.  Doc. 17 at 7-8.  An impairment is medically equivalent to a listed

8      impairment if it is at least equal in severity and duration to the criteria of any listed

9      impairment.  20 C.F.R. § 416.926(a).  Plaintiff failed, however, to present any supporting

10     evidence of medical equivalence at his hearing and makes no supporting argument in his

11     brief.  For those reasons, the ALJ's finding that Plaintiff has no medically equivalent

12     impairment was not in error.  *See Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005)

13     ("An ALJ is not required to discuss the combined effects of a claimant's impairments or

14     compare them to any listing in an equivalency determination unless the claimant presents

15     evidence in an effort to establish equivalence.") (citation omitted).  The ALJ adequately

16     addressed Listing 4.02 and did not commit legal error.

17            **B.      Weight Given to Medical Opinions of Record in RFC Assessment.**

18            Under Ninth Circuit precedent, "[t]he medical opinion of a claimant's treating

19     physician is entitled to 'special weight.'"  *Rodriguez v. Bowen*, 876 F.2d 759, 762 (9th

20     Cir. 1989) (quoting *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988)).  An ALJ may

21     reject "the treating physician's opinion, but only by setting forth 'specific, legitimate

22     reasons for doing so, and this decision must itself be based on substantial evidence.'"

23     *Rodriguez*, 876 F.2d at 762 (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (1986)).  The

24     ALJ can meet this burden "by setting out a detailed and thorough summary of the facts

25     and conflicting clinical evidence, stating his interpretation thereof, and making findings."

26     *Reddick*, 157 F.3d at 725.  Furthermore, clear and convincing reasons are required to

27     reject a treating physician's subjective judgments and ultimate conclusions.  *See Lester v.*

28     *Chater*, 81 F.3d 821, 830-33 (9th Cir. 1996).

1

**1.     Dr. Wilbert Su, Treating Cardiologist.**

2       Dr. Su is a cardiologist who has treated Plaintiff since 2008.  Tr. 231-32, 238-41.

3  On March 8, 2010, Dr. Su opined in a medical assessment that Plaintiff could not

4  "perform work 8 hours a day, 5 days a week" due to "congestive heart failure,

5  cardiomyopathy, atrial fibrillation, [and] status post implantable cardiac defibrillator

6  implantation." Tr. 271-72.  On February 25, 2011, Dr. Su opined that Plaintiff "is unable

7  to sustain a full time competitive work pace" and can "sit less than three hours, stand and

8  walk less than two hours," and "can lift and carry less than ten pounds" in a work day.

9  Tr. 764-65.

10      The ALJ assigned little weight to Dr. Su's opinions because he found that the

11 February 2011 medical assessment was identical to the March 2010 medical assessment

12 despite being nearly a year apart and notwithstanding Plaintiff's positive responses to

13 therapy.  Tr. 25.  He noted that the assessments failed to indicate whether Plaintiff's

14 limitations would last the required 12 months.  *Id.*  He also found that Dr. Su's opinions

15 were "inconsistent with the claimant's subjective statements during his hearing and to

16 treating providers regarding working for his rent, volunteering for the cat rescue, and

17 doing work at his apartment complex." *Id.*  The ALJ provided additional examples of

18 objective medical evidence in the record that conflicted with Dr. Su's opinion. *Id.*

19      Plaintiff asserts that Dr. Su's failure to specify the duration of limitations is

20 unpersuasive as a basis for the ALJ's decision.  Doc. 17 at 14.  But failure to specify

21 whether the impairment found by Dr. Su would last at least 12 months is clearly relevant

22 because an impairment constitutes a disability only if it can be expected to result in death

23 or has lasted or can be expected to last for 12 months or more.  20 C.F.R. §§ 404.1526(a),

24 404.1505.

25      Plaintiff asserts that the ALJ's conclusion that the opinion rendered by Dr. Su is

26 inconsistent with Mr. Fruits' subjective statements during the hearing is not supported by

27 substantial evidence.  Doc. 17 at 15.  The Court agrees.  ALJ relied on Plaintiff's

28 statements that he did physical labor for his landlord in exchange for rent, volunteered

1    weekly at a cat rescue, drove, and independently tended to his personal care.  Tr. 25, 58-

2    50.  The record discloses, however, that these activities are performed only infrequently

3    and with frequent breaks.  Tr. 46, 63, 187, 700.  The Court cannot conclude that the

4    ALJ's finding was supported by substantial evidence.

5              Plaintiff argues that the ALJ erred in finding that Dr. Su's March 2010 and

6    February 2011 medical assessments were identical and that Plaintiff's condition

7    improved between the March 2010 and February 2011 assessments.  Although the

8    medical assessments are not entirely identical, they are nearly identical.  The only

9    difference is that the second medical assessment included an evaluation of Plaintiff's

10   standing, sitting, and lifting abilities while the assessment did not.

11             Plaintiff argues that the record demonstrates an ongoing pattern of symptoms that

12   explains the similarity of the forms.  Doc. 17 at 15-14.  The ALJ noted, however, that just

13   before rendering his first opinion, Dr. Su's treatment notes indicated that Plaintiff's heart

14   had returned to normal sinus rhythm and that Dr. Su had reduced Plaintiff's medication.

15   Tr. 25; Tr. 762.  Plaintiff's improved condition continued over six months until he was

16   hospitalized when his automatic implantable cardioverter defibrillator ("AICD") fired

17   many times while he attempted to paint an apartment.  Tr. 747-49.  An echocardiogram

18   taken at the time revealed that his ejection fraction was approximately 40 percent, which

19   was the healthiest it had been in years.  Despite this improvement and Dr. Su's statements

20   that he was pleased with the progress in Plaintiff's heart condition (Tr. 61-62), and

21   normal findings in the examinations Dr. Su performed of Plaintiff, the report of Dr. Su's

22   second medical examination was more restrictive than the first.  The extreme restrictions

23   in Dr. Su's second opinion seem inconsistent with Plaintiff's improvement.

24             The Court concludes that the ALJ reasonably relied on these inconsistencies when

25   discounting Dr. Su's opinions.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir.

26   2008) (finding that the incongruity between the treating doctor's questionnaire responses

27   and her medical records provided a specific and legitimate reason for rejecting the

28   doctor's opinion of claimant's limitations; *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir.

1  2007) (ALJ must consider a medical opinion's consistency with the record as a whole).

2  The ALJ presented clear and convincing reasons supported by substantial evidence for

3  assigning little weight to Dr. Su's opinions.

4          **2.    Dr. Elliot Salk, Consulting Physician.**

5        The ALJ gave great weight to the opinion of consultative examiner Dr. Elliot Salk,

6  which the ALJ found to be "consistent with the medical evidence as a whole and

7  supported by the claimant's consistent complaints to treating providers, treating source

8  opinions, and objective studies."  Tr. 25.  Although the ALJ did not explain how Dr.

9  Salk's opinion was consistent with the medical evidence as a whole, Plaintiff does not

10  appear to object to the ALJ's reliance on Dr. Salk's opinion.  Instead, he asserts the ALJ

11  did "not adopt all of the restrictions opined to by Dr. Salk."  Doc. 17 at 17.  Plaintiff

12  argues the ALJ "cherry pick[ed] from the record," which constitutes legal error.  *Id*.

13        Dr. Salk opined that Plaintiff was moderately impaired in concentration,

14  persistence, and adaptation, and mildly impaired in social interaction.  *Id*. at 710-13.  The

15  ALJ's RFC restricts Plaintiff to simple, routine, and repetitive work that involves no fast-

16  paced production requirements, few workplace changes, and simple, work-related

17  decisions.  *Id*. at 23.  This RFC accords with Dr. Salk's opinion that Plaintiff "would have

18  trouble adapting to a new work environment" and that he had "no problems suspected for

19  tasks that require very little physical exertion and very low stress."  *Id*. at 710.  The RFC

20  also takes account of Dr. Salk's opinion that "normal hazards are likely to trigger anxiety,

21  which will likely make [Plaintiff] think that he might die," by restricting Plaintiff's

22  exposure to moving machinery or unprotected heights, thereby limiting situations in

23  which Plaintiff is likely to feel that his life is in danger.  *Id*. at 23, 710.

24        Although Plaintiff argues that some portions of Dr. Salk's opinion do not accord

25  perfectly with the RFC, the Court finds that the RFC is consistent with Dr. Salk's opinion

26  and the record viewed as a whole.  Doc. 17 at 17; *see Reddick*, 157 F.3d at 720.

27          **3.    State Agency Physicians.**

28        The ALJ gave great weight to the opinion of state agency reviewing physicians,

1     Drs. Zuess, Maloney, and Wavak, in formulating the RFC.  Tr. 25.  Plaintiff argues that

2     reliance on these opinions is improper because the ALJ "does not identify the specific

3     findings of the doctors or the evidence that lends credulity to these opinions."  Doc. 17 at

4     18.   He contrasts their opinions with the weight generally due a treating physician.

5     Doc. 22 at 9.  Plaintiff improperly frames the issue.  Dr. Su's testimony was discounted

6     by the ALJ because it conflicted with objective medical evidence and for other reasons

7     outlined above, not because it was outweighed by the opinions of Dr. Salk or the state

8     agency physicians.  Tr. 25.

9           Moreover, an ALJ may rely on the opinions of Drs. Zuess, Maloney, and Wavak

10    because "the findings of a nontreating, nonexamining physician can amount to substantial

11    evidence, so long as other evidence in the record supports those findings."  *Saelee v.*

12    *Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (citations omitted).  Dr. Maloney opined in

13    January 2010 that Plaintiff was capable of a range of sedentary work.  Tr. 653-61.  Dr.

14    Wavak affirmed that opinion in March 2010.  *Id*. at 704.  Immediately prior to Dr.

15    Maloney rendering his opinion, Plaintiff reported that he spent most of the day sitting on

16    a couch watching TV, that he was president of a dart league, and that he was able to

17    perform work at his apartment complex.  Tr. 700-01.  In the time between Dr. Maloney's

18    opinion and Dr. Wavak's opinion, Plaintiff had two appointments with Dr. Su in which

19    Dr. Su found Plaintiff had maintained a normal sinus rhythm for months, Plaintiff had no

20    complaints, and Dr. Su reduced Plaintiff's medications.  Tr. 585, 762.  As the government

21    notes, there is only one significant medical event of record between March 2010 and the

22    time that the ALJ handed down his decision – a September 2010 hospitalization.  Doc. 18

23    at 19; Tr. 747-52.  The hospitalization was precipitated by painting a room in Plaintiff's

24    complex, which is a level of activity that exceeds the sedentary functional limitations

25    recommended by Dr. Maloney and Dr. Wavak.  The Court cannot conclude that the

26    September 2010 hospitalization would have or should have altered their opinions.

27          Dr. Zuess, a psychologist, was properly given substantial weight because his

28    opinion was consistent with the record and with the opinions of Dr. Salk and Ms. Mowatt

1    who was Mr. Fruits' counselor.  Plaintiff correctly notes that Dr. Zuess was not able to

2    consult all relevant records in formulating his opinion (Doc. 22 at 10-11), but given that

3    Dr. Zuess reviewed substantially all of the mental health records and his opinion meshed

4    well with the other mental health experts of record, the ALJ did not commit legal error in

5    crediting Dr. Zuess' opinion.

6            **C.      Weight Given to Reported Symptoms.**

7          "Pain of sufficient severity caused by a medically diagnosed 'anatomical,

8    physiological, or psychological abnormality' may provide the basis for determining that a

9    claimant is disabled."  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)

10    (citing 42 U.S.C. § 423(d)(5)(A); *Bunnell v. Sullivan*, 947 F.2d 341, 344-45 (9th Cir.

11    1991)).  "[O]nce a claimant produces objective medical evidence of an underlying

12    impairment, an ALJ may not reject a claimant's subjective complaints based solely on

13    lack of objective medical evidence to fully corroborate the alleged severity of pain."

14    *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (citation and alterations omitted);

15    *see Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996) ("The claimant need not

16    produce objective medical evidence of the pain . . . itself, or the severity thereof.  Nor

17    must the claimant produce objective medical evidence of the causal relationship between

18    the medically determinable impairment and the symptom.") (citing *Bunnell*, 947 F.2d at

19    347-48); 20 C.F.R. § 404.1529(c)(2).  In addition, and significantly for this case, unless

20    the ALJ "makes a finding of malingering based on affirmative evidence thereof, he or she

21    may only find [the claimant] not credible by making specific findings as to credibility and

22    stating clear and convincing reasons for each."  *Robbins v. Soc. Sec. Admin.*, 466 F.3d

23    880, 883 (9th Cir. 2006) (citing *Smolen*, 80 F.3d at 1283-84).  "'General findings are

24    insufficient; rather, the ALJ must identify what testimony is not credible and what

25    evidence undermines the claimant's complaints.'"  *Reddick*, 157 F.3d at 722 (quoting

26    *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

27          The ALJ made no specific finding of malingering, but he did make sufficiently

28    specific findings as to credibility and stated clear and convincing reasons for his findings.

1   The ALJ based his credibility analysis on many inconsistencies between Plaintiff's
2   allegations of physical limitations and documented findings in the medical record.  The
3   Plaintiff claimed that he was unable to lift more than 10 pounds without his defibrillator
4   activating, that he must elevate his feet throughout the day due to edema, that he has
5   difficulty sleeping at night, that he must take frequent naps during the day, and that he
6   must take frequent breaks when performing menial tasks that require little physical effort
7   such as washing dishes.  Tr. 46-52, 70-71.  The ALJ found Plaintiff's claims about his
8   physical limitations to be inconsistent with recent findings by his treating physician that
9   he was responding well to treatment.  Tr. 25; *see Morgan v. Comm'r of Soc. Sec. Admin*,
10  169 F.3d 595, 599 (9th Cir. 1999) (finding that ALJ provided clear and convincing
11  reasons to reject claimant's testimony by citing, in part, medical reports of improvement
12  that contradicted claimant's testimony).  The ALJ also relied on a September 2010
13  echocardiogram that revealed a 40 percent ejection fraction as a basis to find that
14  Plaintiff's cardiovascular health was significantly improving and to undercut Plaintiff's
15  testimony that he had an ejection fraction of 20 percent after his MAZE procedure.
16  Tr. 25.  The ALJ noted inconsistencies between Plaintiff's self-reported concentration
17  problems and his successful performance on cognitive tests administered by Dr. Salk.  Tr.
18  22; *see Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (inconsistencies between
19  claimant's allegations of knee pain and tests showing normal knee function constituted
20  substantial reasons to doubt credibility of claimant's testimony).  The ALJ also identified
21  portions of Plaintiff's own testimony that conflicted with his allegations of physical
22  limitation.   Tr. 24-25; *see Berry v. Astrue*, 622 F.3d 1228, 1235 (9th Cir. 2010)
23  (claimant's self-reported activities undermined his credibility and suggested a "greater
24  functional capacity" than alleged).  The Court concludes that the ALJ provided clear and
25  convincing evidence that Plaintiff's testimony lacked credibility.
26
27
28

1   **IT IS ORDERED** Defendant's administrative decision denying benefits is

2 **affirmed.** The Clerk shall enter judgment consistent with this order.

3   Dated this 17th day of October, 2013.

4

5

6

7              David G. Campbell
               United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28